May it please the Court, Patrick Gerda for the United States. I'd like to reserve four minutes for my rebuttal. Just watch the clock, Counsel. Certainly. Your Honors, this case involves the scope and applicability of 11 U.S.C. 1222a-2a, which eliminates the priority of governmental claims arising out of the sale of any farm asset used in debtors' farming operation. The Bankruptcy Court held that this provision did not apply to post-petition income taxes, and that decision is correct for two reasons. First of all, it has the support of the statutory framework, in particular the provisions of Chapter 12. And furthermore, as described by the Bankruptcy Court, the taxes here were not incurred by the State under Chapter 12. I have a couple of questions for you. Okay. Well, first of all, I mean, the statutory scheme that you put us through is very – it's not easy to understand when you just encounter it for the first time. That's why I'm here, Judge. Right. Okay. Well, you're going to help me understand it by the time we finish this afternoon or this morning. I hope. First of all, you know, the Eighth Circuit went the other way. It went the way of the district court in Knutson. That's right. Right. So where did the Eighth Circuit go wrong? Well, the Eighth Circuit went wrong because it focused on 12. You're asking us to create a circuit split, so I'm sensitive to that. I recognize your sensitivity, Judge. So I want to know where the Eighth Circuit went wrong. Well, the Eighth Circuit went wrong because it did not take a holistic approach to this interpretation. Holistic? That's exactly what they did. Well, actually, Judge O'Scanlon – They filled in all kinds of blanks in terms of legislative intent and – Well, what – actually, what they did was they focused on 1222a2a with blinders, and then they rationalized back from the conclusion that 1222a2a talked about claims – Well, 1222a2a seemed – I mean, it's clear from 1222a2a that Congress wanted to give relief, I mean, to farmers, right? That's correct. So what's – and you said, well, it clearly applies to pre-petition. That's right. So why wouldn't Congress also want to help post-petition – deal with post-petition sales where farmers make income from sale of their farm-related equipment and property? That's an excellent question. I mean, that's what the Eighth Circuit seems to say, that Congress wanted to help these farmers, whether it's pre- or post-petition. Is there a policy difference between the two? Well, I don't think that there's necessarily a policy difference. However, I don't think that the bankruptcy code allows for them to expand based on the purported legislative intent. And the reason is because under 1222, which sets forth the necessary and permissive elements of the plan, 1222a2 is the general section. And 1222a2 says that claims entitled to priority must be provided for in a plan. So that's where we start. And 1222a2a is an exception to that. And 1222a2a just talks of claims. So it's talking about referring back to 1222a2, the more general provision. Now, claims entitled to priority under 507 might not seem like a term of art. But if you look at 507, it actually is. Because 507 provides categories of priority for two different types of things, claims and expenses. And the government does not argue that the bankruptcy code doesn't sometimes use these terms interchangeably. In fact, in our brief, page 18, we concede that point. However, in this case, 507a distinguishes between the two. And that's the operative difference. Because in 507a, the categories of claims that are articulated are all prepetition claims. And the only expenses are the postpetition expenses that we have here. Yes, Judge. Are you telling us that Senator Grassley, who very carefully carved out the exemption, at least prepetition, simply dropped the ball and failed to connect the postpetition subsection when he drafted this legislation? I'm not sure exactly what Senator Grassley was after. I know that he intended to do that. But I'm not sure that he was after the sales of ranch property, farm property, under these circumstances. Well, I think that he did want to afford a benefit to the farmers. I definitely think the legislative history supports that. However, we also have to look at the general distinction that the bankruptcy code often draws between postpetition and prepetition and according to different privileges, as the Second Circuit recently noted in the In re Ames case, which was the subject of our 28J letter. So I think that while the legislative history does seem to indicate that a more expansive reading, based on the bankruptcy code and based on the emphasis provided on the difference between postpetition and prepetition, perhaps that wasn't the case. And this is ref Oh, Judge, did you have a question? Well, just going to finish up, then I do have a question. Oh, I was just going to say, it's not just 1222A2A's language or A2's language that distinguishes between claims and expenses, but also the interrelated provisions of 1227 and 1226. Would you like me to address this, Judge, or do you want to get in? I want to go back to Knudson again and kind of elaborate on your answer to Judge Paez's question. Where did the Eighth Circuit go wrong from the point of view of the government? Okay. From the point of view of the government, the Eighth Circuit went wrong because they interpreted claims to just mean a right of payment. Claim in which section? 1222A2A. All right. So they just looked at A2A and said, well, claim doesn't have any sort of limiting language like postpetition or prepetition, and therefore, it includes an administrative expense. The problem there was they didn't look at the language that A2A was accepting, which is A2, and that language actually does contain the limitation that the government suggests. And rather than — Claims entitled to priority under section 507 unless. That's right. Because the claims entitled to priority under 507, 507 expressly gives priority to both claims and expenses by its terms. The language of — the preparatory language of 507 says, you know, the following claims and expenses are accorded priority in the following order. So they — 507 actually draws a distinction between expenses and claims. There's only one category of expenses, and that's 507A2 administrative expenses, which the — which the postpetition taxes would have to be in order to qualify for priority. So that's where we think that the Eighth Circuit really — the Eighth Circuit analysis took a slight wrong turn. And from there, the Eighth Circuit tried to basically reconcile the other provisions according to this new understanding. But we would suggest that there's no — there's no reason to labor as the Eighth Circuit did, considering Chapter 12 is consistent. There's a dichotomy in Chapter 12 between prepetition claims and postpetition administrative expenses illustrated by 1227 and 1226v1. Very different from Chapter 13. Somewhat different from — from Chapter 13, since it was partly based on it. But, yes, it is. So in 1227, basically a plan — the effect of a confirmed plan binds only creditors, in addition to a number of other entities, such as debtors and equity security holders. But for our purposes, it's creditors that we're after. Now, creditors are holders of prepetition claims, okay, with a few exceptions, which aren't pertinent here. So the holders of prepetition claims are bound by the plan. 1226v1, on the other hand, expressly addresses the — the holders of 507A2 administrative expense claims. And those 507A2 administrative expense claims are treated independently and separately from the plan. And they actually have the right to their payment before — before payments under the plan. Now, this is — I know this is — we're in a blizzard of section numbers right now. But this is important because the specific addressing of administrative expense holders separate from the plan should control over the general position of the Eighth Circuit that claims would — would bring administrative expenses under the plan. You know, I think as a matter of going through all of these sections, you're probably right. On the other hand, it doesn't seem to comport with what Senator Grassley said a zillion years ago, all by his lonesome, on something else. What — if we were to disagree with you, for example, what collateral damage would such an interpretation do? I mean, let's take this — you know, okay, we deal with this. Sometimes we resolve this. We do justice. But we trash something else. Is there anything else that gets trashed by doing this? Well, I think there are two responses to that, Judge Croft. First of all, you're trashing a fundamental distinction between administrative expenses and claims in the Bankruptcy Code. And that's going to leach out into other areas beyond this. And it's been interrelated with Chapter 12 since Chapter 12 was based on Chapter 13. It's not precisely the same, but there could be some cases in which that occurs. And secondly, it has severe ramifications because there's an impact on sovereign immunity. The government has only waived its sovereign immunity as to 1227. It has not waived its sovereign immunity as to 1222a2a. So the government — basically, just to step back for a second, 1222a2a is part of Section 1222, which sets out the elements of a plan. The United States has not waived its sovereign immunity as to that, but only as to 1227, the binding effect of a confirmed plan. The binding effect of a confirmed plan, as we just talked about, only binds the United States as a creditor, namely a pre-petition holder of a claim. Now, if we were to interpret — or if you were to interpret 1222 to include administrative expenses, that express waiver of sovereign immunity only in the context of pre-petition expenses would be overrided. And as Judge Colleton said, the Eighth Circuit, in his concurrence in the Eighth Circuit — And that's in partial dissent. Right. That's correct. Dissent, to be fair, on two issues that aren't before the Court. Right, right, right. But in his concurrence, the Eighth Circuit never articulated an express waiver of sovereign immunity that would justify. Let me ask you this, just to follow up on Judge Trott's question. For the farmer, what's the collateral damage to the farmer, if we adopt your view? Well, for the farmer, the only collateral damage is in the ramp-up to a bankruptcy filing, the farmer would have to actually sell the property. Is there anything in the record that explains why that didn't happen here? No. I mean, why did they wait? Why didn't they go forward? That's just an atmospheric that I'd like the other side to answer, I guess, because I couldn't find the — Well — I mean, there's always — there's a lot of pre-planning before you ever go into a bankruptcy. I mean, I know that. You set all your ducks up so that then they fall down in a certain way. I just don't quite understand how they got into this trap. Well, it's unclear, and part of it could have been the change in legislation in 2005 being pretty quick before this bankruptcy was filed. However, I'd also say — I'd also note that, in this case, my understanding is that basically there was an agreement in place even before the bankruptcy filing, I believe. Counsel, you're down to about a minute and a half, so you might want to reserve — So under the government's position, once the plan is confirmed, the farmers here are still obligated to pay the tax that's due. That's right. Thank you, Counsel. What you're saying is we've got to follow the code, and if Congress doesn't like it, it's up to them to change it. Yes, sir. Not us. All right. Very well. Good morning. Clifford Alfeld on behalf of the debtors and the appellees herein. To address specifically some of the questions raised by the bench, number one, there was a contract to sell the farm property pre-bankruptcy, but the lien holder who was one of the debtors' father got in a fight. He wouldn't take the payoff, and so they had to file bankruptcy to sell the property free and clear of all liens. I don't think that has any bearing on the result today, but it is interesting. I was curious. Right. Number two, the sovereign immunity claim, we believe, falls pursuant to the analysis that the Eighth Circuit did, and here's why I agree there is a mind-numbing blizzard of code sections, but they are not that difficult to navigate. The section that waives sovereign immunity is 106 in the Bankruptcy Code, and 106 says the government hereby waives sovereign immunity under sections 1227, which is what counsel told you, but also under 503, and we are here under 503 because there's really just three statutes. 1222A2A says we can strip the priority if it's under 507, and 507 says if it's incurred by the estate under 503, just three statutes. So we're here under 503, and as long as I can qualify under 503, they've waived sovereign immunity under 503 pursuant to 106. So I don't think sovereign immunity is the issue. Yes. So long as you can qualify under 503. Affirmative. Okay. 503 says any tax incurred by the estate, and incurred by the estate, number one, the uniform interpretation of incurred by the estate is postpetition. Why? You don't have an estate until you file a petition. It's logic. Do estates incur tax liability? Some do and some don't. What about Chapter 12 estates? Okay. Chapter 12 estates are not a separate taxable entity. Right. But the determination of whether it is incurred by the estate is not dependent on the type of chapter. And this is what the courts have looked at it. It is simply a question of timing. In other words, before or after the filing. For example, Chapter 13 has a different statutory scheme, because in the Brown case, there's 1305, which says that a tax creditor can either be a elect to be a prepetition creditor or can wait until the 13th is over and then try and collect, but can't be an administrative creditor. So each of the different sections has to be a taxable entity? Yes. Congress has, can create a hybrid situation, as they did in Chapter 12, where you don't have a separate taxable entity, but nevertheless, you're able to discharge or address the taxes. In this case, what the government is trying to do under 503 is say that when Congress said incurred by the estate, they said, footnote, parentheses, provided it is a separate taxable entity. And we respectfully suggest that under the plain reading, if one takes that approach and even ignores the legislative history, which you shouldn't, that they are trying to engraft a condition that incurred by the estate only works if it is a separate taxable entity. Congress didn't say that. All of the half-dozen courts that have looked at this issue, especially the Dawes decision by the Bankruptcy Court, which is a very detailed and nuanced decision that is wrapped up into the Eighth Circuit appeal, goes through and they all conclude that incurred by the estate is a timing issue and that whatever chapter you're in doesn't matter. It seems the key ingredient of your argument is what Senator Grassley said a long time ago. Am I right? Yes. How is that even legislative history? Did he say it with respect to precisely what we're talking about? He said it with respect to the bill, to an identical bill that was ultimately enacted that was 1222a2a. So yes and no, Your Honor. But how can that be legislative history of this? I mean, it's way back when. It's one statement by somebody. It wasn't precisely this legislation that they were talking about. Is it fair to even call it legislative history in the sense that we use that to illuminate the meaning of a bill? It is remote. Yeah. And we will grant you that. But it is nevertheless Senate discussion on the identical language that was enacted. And so — Well, it's Grassley discussion. Justice Scalia would love to write something about this. About this. If one took Justice Scalia's approach, one would say under 1222a2a, it never says comma only for prepetition. 1222a2a does not restrict its use to prepetition. So the absence of those language, if you just read those words, could be pre- or postpetition. So that would support the debtor's position. And then when you go to 507, which is indeed referred to, what the government says is under 507, talking about priorities, there's many sections about claims, but the one that the debtors are relying on talks about administrative expenses, and by failing to reference administrative expenses, it just means claims. And that's an important issue. I'd suggest it can be resolved as follows. The government cited the Ames case that said expenses under 507, administrative expenses, are not the same as claims. And that case cites the micro-wage case, which we neglected to cite to you in our briefs, but is indeed cited in the supplemental letter that the government provided you, because they gave you the Ames case, and the Ames discusses micro-wage, which is a Ninth Circuit bankruptcy appellate panel. And we apologize for not calling it to the Court's attention, but it came to our attention as a result of the government's supplemental letter about two weeks ago. In the micro-wage case, they discuss when claims mean all claims and when they're different from expenses. And the Ninth Circuit bankruptcy appellate panel, in that context, said no, claims includes claims and expenses. And when one looks in a Scalia-like fashion to the definition of claims in the code, it is not restricted to prepetition claims. Creditor is. Creditor is prepetition. But claims can include any claim. It's 101, I believe, 5. And it even includes unmatured. And we would suggest that certainly the reference in 1222a2a, in 507, in 503, all addresses claims that can be either pre- or post-petition, so that the using a plain language approach, the statute does not exclude post-petition, and its language using the word claims is broad enough to include pre- or post-petition. And the public policy, which is to relieve debtors of selling their property, the creditors get the money and the debtor gets the tax bill. That's what it was addressed, is equally pernicious pre-bankruptcy or post. And the government's interpretation, if we went contrary, if this Court goes contrary to the Eighth Circuit, will mean that if a debtor has the foresight to sell their farm prior to a bankruptcy, they get not relieved, but they get to treat some of those debtors, most probably get paid pro rata, but if they have to sell it through the bankruptcy, then they don't get to do that, and the creditors get the money and the debtor would get the full amount plus the interest? If the property is worth more than the debt, then a secured creditor gets the full principal, the interest, and attorney's fees. If the property is worth less than the debt, then no, there's a – there's – they don't. Pro rata. Is the short answer. It's pro rata or, as the Bankruptcy Court asserts. So the language of the statute is broad enough to accomplish it. The legislative history shows what they wanted to accomplish. We believe the analysis of the Eighth Circuit, where did the Eighth Circuit go wrong, that it did not go wrong. And uniformly, the bankruptcy courts that have addressed this, except for the bankruptcy court in Tucson that originated this case, have said that incurred by the estate under 503 means what it logically should. You don't have an estate until you file bankruptcy, so that references postpetition and that the government's attempt to impose, quote, only where there's a separate taxable entity, close quote, is not in the statute, is not in the language of the statute, and is a misinterpretation of what incurred by the estate, an over-reading of what incurred by the estate means. Now, the two cases, you've got O'Neill, which is an Eighth Circuit case, said of course incurred by the estate means postpetition. I think they throw it in in a parenthesis and it was not even debated or litigated. That is at least just, you know, that's a case one can – that is some reliance one can have. The other case, which is Brown the contrary way, is that Chapter 13 case, but that has a different code provision that they were addressing, that 1305, so we would suggest that doesn't have relevance for this Court. So you end up going back to what does incurred by the estate mean? Well, the estate under 1207, Chapter 12 estate, is defined, and an estate is what occurs once you file a petition. So incurred by the estate is taxes that are incurred postpetition. So we'd suggest that the Eighth Circuit didn't fill in as many gaps as it may otherwise seem if one interprets claim to mean both a prepetition and administrative expense claims, and they are all lumped together under 507, and 507 is entitled priorities. And the cases – this is why the Ames case that counsel provided you in the letter and the microage case, in different cases, in different contexts, claims sometimes means pre- and postpetition claims. And in other, it just has a more narrow meaning that it's only prepetition claims. So it depends on the context. So then we're back to here, what should it mean here? And there is no purpose to be served by excluding administrative expenses under 507 from the reference to claims in 1222A2A. It accomplishes the correct purpose to have the broader interpretation. It doesn't do any damage to the statutory language. And you can get to that result even without the legislative history, remote as it may be. I'm glad to answer any other questions the panel may have. Thank you, counsel. You've been very helpful. Mr. Erta, when you – it's your turn. I would appreciate it if you would respond specifically to two points. First, the 503 point that Mr. Althoff made, and also his discussion of the, quote, incurred by the estate, unquote. In what manner do you want me to respond to 503? Well, I guess I just don't understand precisely what you're looking for regarding your first question. Well, he takes us through section 106 to 503 as suggesting that there is a waiver. Right. Of sovereign immunity. Okay, certainly. Now, as we stated in our reply brief, I believe, the idea that section 503 by itself is enough to waive sovereign immunity as to all sections that implicate 503 seems to be an unjustified expansion of the sovereign immunity in that section. In other words, he's reading it too broadly? Is that what you're saying? That's correct. And I would also say that even if this Court were to think that 503 were to affect such a waiver of sovereign immunity, it doesn't change the fundamental question, which is whether the Chapter 12 framework actually created the distinction in this case between administrative expenses and pre-petition claims under a plan. And as we discussed before, and a section that Mr. Altfeld didn't talk much about, 1222A2, shows that this is not one of those cases where claims and expenses are all lumped together. 507A2 distinguishes between them. And I see my time is remaining, but I'd like to respond to you just briefly on the 503B incurred by the State language. And I won't take much time, because I'm quite ready to submit this question on our briefs. However, I would note that the language itself does not contain any sort of time requirement. Even though all incurred by the Estates would be post-petition, because you don't have the estate until the filing of a bankruptcy, in this case we believe that incurred by the estate means what it says. And since there is no separate taxable entity, and that's what the question is, whether taxes are incurred by the estate, as you pointed out, Judge Trott. But you're suggesting, I suppose, that the tax is properly incurred by the debtor. That's correct. But it doesn't say that. It says incurred by the estate. Well, yeah. In the context of Chapter 12, because Chapter 12 does not have a separate entity, we believe that that would be the case. But don't we have to give some respect to the language which is actually in the statute? Yes. And that's exactly why we think that our interpretation is actually consistent with the language of the statute. Administrative expense priority under this separate argument, which is an independent argument, is restricted to only those cases where the tax is actually incurred by the estate rather than under those chapters that are incurred by the debtor. And I know that we've heard some talk about legislative history, even regarding the time. But under House Report 95-595 at 277, which is cited in our brief, the House of Representatives Committee notes, notes, if the estate is not a separate taxable entity, administrative responsibility varies according to the nature of the debtor and the chapter under which the case is filed. Now, what that basically means, as I read it. Well, that goes back to his argument about context. Yes. That's right. This goes back to whether it means time or it's whether incurred by the estate means incurred postpetition or incurred by a separate administrative entity. And this language seems to indicate, which is legislative history as to 503b1bI. It goes to establishing that Congress was actually concerned with the administrative entity, which chapter, what's the nature of the bankruptcy when deciding whether to accord the 503b1bI administrative expense status. Mr. Alfield suggests if we penetrate deeply enough into the Ames case, we'll find support for his position. Do you have any answer to that? Well, my only answer to that is the answer which is contained in our brief on page 18. The microage case, which is at 291br503 from this Court's bankruptcy appellate panel, does state that at times claims include administrative expenses. And as I've said several times, we don't dispute that at some points in the bankruptcy code that's true. But this isn't one of those times. This isn't one of it based on 1222a2 and 507a2. Let me just ask you, did the government petition for cert in Knutson? No, it did not. Okay. Counsel, thank you very much. The case just argued will be submitted. But before it is submitted, on behalf of the panel, I would like to express our deep appreciation to both counsel for a very, very helpful analysis in this very, very complex case. Thank you very much. The Court will take its morning recess at this time. Ten minutes.
judges: O'scannlain, Trott, Paez